IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GERALD T. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 03-733-KAJ |
| ) | |
| JOANNE B. BARNHART, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Gerald T. Smith, Rt. 1, Box 148 A1, Frankford, Delaware 19945; Pro Se.

David F. Chermol, Social Security Administration, Office of Regional Counsel, Region III, P.O. Box 41777, Philadelphia, Pennsylvania 19101; Counsel for Defendant.
    Of Counsel:  Donna L. Calvert, Social Security Administration, Office of Regional Counsel, Region III, P.O. Box 41777, Philadelphia, Pennsylvania 19101.

Wilmington, Delaware
February 22, 2006



JORDAN, District Judge

## I. INTRODUCTION

Before me is a Motion for Summary Judgment (Docket Item ["D.I."] 24) filed by plaintiff Gerald T. Smith ("Smith"), and a Motion for Summary Judgment (D.I. 27) filed by the defendant, Joanne B. Barnhart, Commissioner of Social Security (the "Commissioner"). Smith brings this motion under 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying him disability insurance benefits under title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433. Jurisdiction is proper under 28 U.S.C. § 1331 and 42 U.S.C. § 405(g). For the reasons that follow, the Commissioner's Motion will be granted, and Smith's Motion will be denied.

## II. BACKGROUND

### A. Procedural Background

Smith applied for disability insurance benefits on July 11, 2000, alleging that he became unable to work on November 30, 1995 because of depression, anxiety, loss of concentration and a sleep disorder. (D.I. 16, Transcript, at 84-86, 89.) After the application was denied both initially (*id.* at 63-65) and upon reconsideration (*id.* at 68-71), Smith requested a hearing before an administrative law judge (ALJ) (*id.* at 72). At the hearing on October 9, 2002 Smith testified, and was represented by counsel. (*Id.* at 24-53.) A vocational expert also testified. (*Id.* at 53-58.) On January 3, 2003, the ALJ issued a decision finding that Smith was not disabled within the meaning of the Act. (*Id.* at 19-23.)

Smith then requested review of the ALJ's decision by the Social Security Administration Appeals Council. (*Id.* at 14-15.) The Appeals Council concluded that

"there [was] no basis ... for granting [the] request for review." (*Id.* at 12-13.) Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. *See* 20 C.F.R. §§ 404.955, 404.981, 422.210; *see also Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) (noting that, if Appeals Council denies request for review, ALJ's decision becomes Commissioner's final decision); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (same). Smith now seeks review by this Court under 42 U.S.C. § 405(g).

B. Facts

Smith was fifty-one on the date of the ALJ's decision, and forty-four on the date he alleges he became disabled. (D.I. 16 at 28.) He completed high school, some college course work, and a vocational training program where he learned to work on heating, ventilation, and air-conditioning equipment. (*Id.* at 31.) Smith alleges that he became disabled on November 30, 1995 as a result of depression and anxiety. (*Id.* at 84-86, 89.) He was laid off from his job in 1995, and drew unemployment benefits for about six months.[1] (*Id.* at 33.) Other than a brief stint as an unarmed security guard in 1998, he has not worked since 1995. (*Id.* at 31-33.)

Smith was last insured for purposes of collecting disability insurance benefits on June 30, 1999. (D.I. 16 at 87.) Thus, Smith must prove that he was disabled within the meaning of the act between November 30, 1995, the date he alleges he became disabled, and June 30, 1999. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. 404.131(a).

---

[1] Smith acknowledged during the hearing in front of the ALJ that, while he drew unemployment benefits, he was "ready, willing and able to work." (D.I. 16 at 45.)

1.     Medical Evidence

The medical evidence in this case is sparse. In 1986 and 1987, long before the date Smith alleges his disability began, Smith complained to his family physician, Dr. Thaddeus Siwinski, of work-related stress on several occasions. (D.I. 16 at 161-65.) Dr. Siwinski noted that Smith was totally incapacitated from July 8, 1986 until July 14, 1986 after working twenty-one of the twenty-three preceding days, and was not to work overtime again until July 28, 1986. (Id.) Smith complained of stress again in February of 1987. (Id. at 167.) Treatment notes from 1988 also indicate that Smith was suffering from stress and depression. (Id. at 170.)

On September 7, 1995, Dr. Marion Kowalewski completed a medical report that diagnosed Smith with anxiety and gave a guarded prognosis. (Id. at 195-96.) Dr. Alfred Forrester, who was Smith's psychiatrist (id. at 35-36), filled out a report on September 19, 1995, which stated that Smith was disabled as of August 17, 1995, but should be able to return to work on October 2, 1995. (Id. at 113.) Dr. Forrester filed out another report on October 24, 1995 which diagnosed Smith with "major dep[ressio]n, recurrent, in partial remission" and with "psychological factors affecting physical condition." (Id. at 176.) On this report, Dr. Forrester indicated that Smith's prognosis was good. (Id. at 173.) This report also noted that Dr. Forrester saw Smith for therapy on September 19 and 28, and October 13 and 24, and that Smith had returned to work on October 23, 1995. (Id. at 176.)

In a report prepared on August 6, 2000, Dr. Forrester indicates that he last saw Smith on November 5, 1996. (Id. at 116; see also id. at 202.) The last progress notes

3

included in that report also bear that date. (*Id.* at 125.) However, a drug summary sheet indicates that someone, likely Dr. Forrester, was prescribing psychiatric drugs for Smith until February 16, 1997.[2] (*Id.* at 118.) In his testimony in front of the ALJ, Smith stated that he did not see a psychiatrist between 1995 and 2000, because he "didn't want to see a psychiatrist anymore." (*Id.* at 34.) Smith began psychiatric treatment with a psychiatrist from the State of Delaware in 2000. (*Id.*)

All other medical evidence in the record relates to non-psychiatric issues that Smith had in the mid-90's. (See D.I. 16 at 177 (discussing injury to elbow); *id.* at 169 (discussing treatment of electrical burn); *id.* at 171 (discussing pain in right flank)

### 2. The ALJ's Decision

To determine whether a claimant is entitled to social security disability benefits, an ALJ applies a sequential five-step inquiry pursuant to 20 C.F.R. § 404.1520. See *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir.2000) (establishing five steps); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir.1986) (same).

> Under that five step analysis, the [ALJ] determines first whether an individual is currently engaged in substantial gainful activity. If that individual is engaged in substantial gainful activity, he will be found not disabled regardless of the medical findings. If an individual is found not to

---

[2] Smith attempts to submit, along with his summary judgment brief, a photocopy of a prescription bottle with a prescription date of May 30, 1997 and bearing Dr. Forrester's name as the prescriber, to show that Dr. Forrester continued to prescribe medication for him through 1997. (D.I. 24 at Ex. 3.) I cannot consider this evidence, as my review here is limited to examining the evidence that was in front of the ALJ. See *Matthews*, 239 F.3d at 593-95 (3d Cir. 2001) (requiring "claimants to present all material evidence to the ALJ and prohibit[ing] judicial review of new evidence unless there is good reason for not having brought it before the ALJ"). However, because it seems from the evidence in the record that Dr. Forrester was in fact prescribing medication for Smith through 1997 (*see* D.I. 16 at 118), the new evidence that Smith attempts to present does not shed any additional light on this point.

4

> be engaged in substantial gainful activity, the [ALJ] will determine whether the medical evidence indicates that the claimant suffers from a severe impairment. If the [ALJ] determines that the claimant suffers from a severe impairment, the [ALJ] will next determine whether the impairment meets or equals a list of impairments in Appendix 1 of sub-part P of Regulation[] No. 4 of the Code of Regulations. If the individual meets or equals the list of impairments, the claimant will be found disabled. If he does not, the [ALJ] must determine if the individual is capable of performing his past relevant work considering his severe impairment. If the [ALJ] determines that the individual is not capable of performing his past relevant work, then she must determine whether, considering the claimant's age, education, past work experience and residual functional capacity, he is capable of performing other work which exists in the national economy.

*Brewster*, 786 F.2d at 583-84 (internal citations omitted); see also 20 C.F.R. § 404.1520(a)(4).

In undertaking this five-step analysis, the ALJ determined that Smith is not disabled as defined in the Act. (D.I. 16 at 22.) After finding that Smith had not engaged in substantial gainful activity since prior to November 30, 1995, the alleged onset date, (*id.* at 21), the ALJ found that the medical evidence was insufficient to establish the existence of a severe impairment (*id.* at 21-22.) In making this determination, the ALJ noted that objective medical evidence, rather than just evidence of symptoms, is required, and that there was "no medical evidence in the record of severe depression, or any other physical or mental impairment, lasting at least twelve months before the claimant last met the earnings requirement." (*Id.* at 22.) Thus, finding that the evidence was insufficient to show that Smith suffered a severe impairment, the ALJ found that Smith "was not under a 'disability' as defined in the Social Security Act, at any time through the date of this decision." (*Id.*)

## III. STANDARD OF REVIEW

Judicial review of the denial of an application for Social Security benefits is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); see *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.1999) (defining "substantial evidence"). Substantial evidence is "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## IV. DISCUSSION

Smith, who appears here pro se, asserts that the ALJ's decision is not supported by substantial evidence, as he claims that he was "totally disabled" during the period between 1995 and 1999, and continues to be disabled today. (D.I. 24 at 1.) After making this assertion, Smith largely focuses on the testimony of Dr. Perlman, the vocational expert who testified at his hearing before the ALJ, stating that he believes that Dr. Perlman's testimony shows that he could not have worked in a vocationally relevant job between November 30, 1995 and June 30, 1999.[3] (*Id.* at 1-2.) Smith also explains an inconsistency in his testimony regarding unemployment benefits. (*Id.* at 3-4.)

---

[3] Smith does not appear to assert that the time period of November 30, 1995 through June 30, 1999 is not the correct relevant period under the Act. Indeed, this appears to be the correct time frame, as Smith alleges that he was disabled as of November 30, 1995 (D.I. 16 at at 84-86, 89), and the record indicates that the last date he was insured under the Act was June 30, 1999 (*id.* at 87).

Smith's arguments, however, are not relevant here. The ALJ found that Smith was not disabled within the meaning of the Act because the medical evidence did not support a finding that Smith suffered from a severe impairment. (D.I. 16 at 19-22.) Thus, the ALJ did not reach the step in the analysis where he examined Dr. Perlman's testimony. (*Id.*) It was not necessary for him to reach any further steps in the analysis, because he had already determined that Smith was not disabled and, regardless of any other facts, was thus not entitled to benefits under the Act. Thus, I will review the ALJ's decision that Smith was not disabled because he did not suffer from a severe impairment.

A severe impairment "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.A. § 423(d)(3). Such an impairment cannot be demonstrated by a showing of symptoms alone. *See Social Security Ruling 96-4p*, 1996 WL 374187, at *1-2 (1996) ("under no circumstances may the existence of an impairment be established on the basis of symptoms alone ... medical signs and laboratory findings" are required); *see also Jones v. Commissioner of Social Sec.*, 48 Fed. Appx. 369, 370, 2002 WL 31018818, at *1 (3d Cir. 2002) ("Subjective symptoms, without more, cannot ordinarily result in a disability finding.").

Here, the ALJ's decision that Smith does not suffer from a severe impairment is supported by substantial evidence. There is virtually no medical evidence that fits within the definition of "medically acceptable clinical and laboratory diagnostic

7

techniques" between November 30, 1995 and June 30, 1999.[4] Smith last saw Dr. Forrester on November 5, 1996, and appeared to continue to fill a prescription until sometime in 1997, likely with assistance from Dr. Forrester. Dr. Forrester's report from October 24, 1995 noted that Smith had returned to work and that his prognosis was good. *See supra* at 3. Smith did not receive any other psychiatric treatment during the relevant period, and did not begin to receive treatment again until the year 2000.

Smith stated, in his testimony in front of the ALJ, that he did not see a psychiatrist between 1995 and 2000 because he "didn't want to see a psychiatrist anymore." (D.I. 16 at 34.) He explains that at a company social function, the company doctor asked him about his depression in front several of his co-workers. (*Id.*) Smith states that he was upset that his sessions with his psychiatrist were not confidential, and that he decided he would "never [see] anybody ever again." (*Id.* at 35.)

Smith describes his symptoms in his testimony, including that he loses concentration, gets upset, has problems swallowing his food, avoids dealing with people, and is suspicious of others. (*Id.* at 36-37, 46-47.) The law requires that a finding of a severe impairment be supported by more than symptoms alone. *See supra* at 7. The only medical evidence on record of treatment between November 30, 1995 and June 30, 1999 is Smith's visits to Dr. Forrester, which stopped on November 5, 1996, and his taking of prescription medication until 1997 to treat his depression. The ALJ's decision that there was "no medical evidence in the record of severe depression

---

[4] The evidence of Smith's depression and anxiety from 1986 through 1988, and evidence of his condition from the year 2000 through the present, is not relevant, as it is not within the relevant time period.

... lasting at least twelve months before the claimant last met the earnings requirement" is supported by substantial evidence. Although I am sympathetic to Smith's description of his symptoms, and to his reasons for not seeing a psychiatrist, his symptoms alone are simply not enough to support a determination of a severe impairment.

## V.     CONCLUSION

Accordingly, the Commissioner's motion for summary judgment (D.I. 27) will be granted, and Smith's motion for summary judgment (D.I. 24) will be denied. An appropriate order will follow.